ORDER STAYING ACTION PURSUANT TO THE COLORADO RIVER DOCTRINE
 

 KAY, Chief Judge.
 

 BACKGROUND
 

 The complaint filed in this case is virtually identical to a counterclaim Plaintiffs asserted in a previous action entitled,
 
 Husam Beidas and Salvador Yaris v. The Morisada Corp., et al.,
 
 Civ. No. 93-00941 ACK (“Beidas Lawsuit”). On November 17, 1993, this previous action was filed in the Circuit Court for the First Circuit of the State of Hawaii. On December 13, 1993, the Beidas Lawsuit was removed to this Court, and, on January 10, 1994, Plaintiffs filed their counterclaim to the Beidas Lawsuit. On April 7,1994, this Court ruled that the ERISA claims were pre-empted and, as a result, dismissed them. Subsequent to a motion for reconsideration, this Court, on September 30, 1994, remanded the Beidas Lawsuit to state court and dismissed the counterclaim without prejudice. On Oc
 
 *735
 
 tober 25, 1994, this Court filed an order denying Plaintiffs’ motion for reconsideration of dismissal of the counterclaim.
 

 Three days later, on October 28, 1994, Plaintiffs filed the complaint at issue here. In addition, Plaintiffs filed a counterclaim in state court in the remanded Beidas Lawsuit. This recent state court counterclaim is virtually identical to both their prior counterclaim and this current complaint. On November 23, 1994, in this Court, Defendants filed a Motion To Dismiss, Or In The Alternative, To Stay The Plaintiffs’ Complaint Filed October 28, 1994 (“Motion”). On February 9, 1995, Plaintiffs filed their Opposition to the Motion (“Opposition”). On February 16, 1995, Defendants filed their Reply to Plaintiffs’ Opposition (“Reply”).
 

 FACTS
 

 According to Defendants, Mr. Morisada and the Morisada Corporation induced Beidas to leave his then current employer and to start working for Morisada Corporation. As part of the deal, Defendants claim Beidas was promised a share in the profitability of the corporation and some ERISA benefits under a profit sharing plan. In reliance, Defendants state, Beidas accepted the offer of employment as of October 9,1984. Beidas then signed an employment agreement dated October 20, 1984 with Morisada Corporation’s predecessor-in-name, ABC Chemical Corporation.
 

 Defendants allege that Morisada breached its contract with Beidas by failing to make contributions to Beidas’ ERISA account, and by breaking other promises. In late 1990, according to Defendants, Beidas stopped working at Morisada Corporation. On or about January 1,1991, Defendants state, Beidas began working for Diversey Corporation.
 

 DISCUSSION
 

 I.
 
 Colorado River
 
 Doctrine
 
 [1]
 

 Under the doctrine enunciated by the United States Supreme Court in
 
 Colorado River Water Conservation Dist. v. United States,
 
 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a federal district court may postpone or decline to exercise its jurisdiction in deference to a “parallel” state proceeding.
 
 See Moses H. Cone Memorial Hosp. v. Mercury Const.,
 
 460 U.S. 1, 17 n. 20, 103 S.Ct. 927, 937 n. 20, 74 L.Ed.2d 765 (1983). The doctrine is an “extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.”
 
 Colorado River,
 
 424 U.S. at 813, 96 S.Ct. at 1244. The
 
 Colorado River
 
 doctrine is based on the promotion of “(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.”
 
 Id.
 
 at 817, 96 S.Ct. at 1246 (citations omitted). Although the doctrine is sometimes referred to as an abstention doctrine, the Supreme Court has rejected this categorization.
 
 See Nakash v. Marciano,
 
 882 F.2d 1411, 1415 n. 5 (9th Cir.1989).
 

 It makes no difference to the state proceeding whether the federal action is stayed or dismissed.
 
 See Attwood v. Mendocino Coast Dist. Hosp.,
 
 886 F.2d 241, 243 (9th Cir.1989). If there is any substantial doubt as to whether the parallel state court proceeding will provide complete and prompt resolution of the issues concerning the party which seeks to invoke federal jurisdiction, it would be a serious abuse of discretion to grant a stay or dismissal at all.
 
 See Cone,
 
 460 U.S. at 28, 103 S.Ct. at 943;
 
 see also Intel Corp. v. Advanced Micro Devices, Inc.,
 
 12 F.3d 908, 913 & n. 4 (9th Cir.1993) (citing
 
 Gulfstream Aerospace Corp. v. Mayacamas
 
 
 *736
 

 Corp.,
 
 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988) (stating that a district court may enter a
 
 Colorado River
 
 stay only if it has “full confidence” that the parallel state proceeding will end the litigation) and
 
 Attwood,
 
 886 F.2d at 243 (providing that by conceding that
 
 Colorado River
 
 applies, plaintiff agrees “beyond any substantial doubt,” that the parallel state court proceeding will provide complete and prompt resolution of the issues in her case)). The decision to invoke
 
 Colorado River
 
 necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.
 
 See Attwood,
 
 886 F.2d at 243 (citing
 
 Cone,
 
 460 U.S. at 28, 103 S.Ct. at 943). The United States Supreme Court has never approved a dismissal under
 
 Colorado River
 
 where the plaintiffs were foreclosed from returning if necessary to federal court, and the Supreme Court has strongly hinted that the invocation of
 
 Colorado River
 
 is contingent on keeping the federal forum open if necessary.
 
 See id.
 
 at 24344. For that reason, if the
 
 Colorado River
 
 doctrine is invoked by a court, the federal proceeding should preferably be stayed, not dismissed.
 
 See id.
 
 at 243-45.
 

 The Ninth Circuit has held that federal courts have a “ ‘virtually unflagging obligation ... to exercise the jurisdiction given them.’ ”
 
 Travelers Indem. Co. v. Madonna,
 
 914 F.2d 1364, 1367 (9th Cir.1990) (quoting
 
 Colorado River,
 
 424 U.S. at 817, 96 S.Ct. at 1246). Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.
 
 See id.
 
 (quotations omitted).
 

 A district court’s discretion must be exercised within the limits of the
 
 Colorado River
 
 doctrine.
 
 [2]
 

 [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case,
 
 with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to ease, depending on the particular setting of the case.
 

 Id.
 
 at 1368 (quoting
 
 Cone,
 
 460 U.S. at 16,103 S.Ct. at 937) (emphasis added). To determine whether “exceptional” circumstances exist to warrant the granting of a stay or dismissal, the court is to balance a number of factors:
 

 (1) whether a court has assumed jurisdiction over any res or property;
 

 (2) the relative convenience of the forums;
 

 (3) the desirability of avoiding piecemeal litigation;
 

 (4) the order in which jurisdiction was obtained, with emphasis on the progress made in the two actions;
 

 (5) whether state or federal law controls;
 

 (6) whether the state litigation will adequately protect the rights of the party seeking to invoke federal jurisdiction; and
 

 (7) whether forum shopping is at issue.
 

 See Travelers,
 
 914 F.2d at 1367-68.
 

 This list is not exhaustive and no one factor is necessarily determinative.
 
 See id.
 
 at 1368;
 
 Nakash,
 
 882 F.2d at 1416. Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one.
 
 See Travelers,
 
 914 F.2d at 1369. The task is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist “exceptional” circumstances, the “clearest of justifications,” that can suffice under
 
 Colorado River
 
 to justify the surrender of that jurisdiction.
 
 See Cone,
 
 460 U.S. at 25-26, 103 S.Ct. at 94142.
 

 
 *737
 
 II.
 
 Application
 

 A. Jurisdiction Over The Res
 

 A common law rule of long standing prohibits a court, whether state or federal from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court.
 
 See U.S. v. One 1985 Cadillac Seville,
 
 866 F.2d 1142, 1145 (9th Cir.1989);
 
 Knaefler v. Mack,
 
 680 F.2d 671, 675 (9th Cir.1982). Consideration of this factor is unhelpful here as the claims at issue do not concern tangible physical property.
 
 See American Int'l
 
 843 F.2d at 1258 (stating that money is not the sort of tangible physical property referred to in
 
 Colorado
 
 River).
 

 B. Inconvenience Of The Federal Forum
 

 In
 
 Travelers,
 
 the Ninth Circuit adopted the Fifth Circuit’s framing of this factor.
 

 The question
 
 in the end is not whether the party opposing the stay can demonstrate that the federal forum is a better or more convenient forum. Rather, it
 
 is whether the inconvenience of the federal forum is so great that this factor points toward abstention.
 

 Id.
 
 at 1368 (quotations omitted) (emphasis added) (quoting
 
 Evanston Ins. Co. v. Jimco, Inc.,
 
 844 F.2d 1185, 1192 (5th Cir.1988));
 
 see id.
 
 (finding that 200 miles is a fair distance to travel and not sufficiently great to make this factor point towards abstention).
 

 Here, the federal forum does not create any inconvenience because it is located down the street from the state forum. Accordingly, this factor carries no weight.
 

 C. Desirability Of Avoiding Piecemeal Litigation
 

 This factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation. “Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.”
 
 Travelers,
 
 914 F.2d at 1368 (quoting
 
 American Int'l
 
 843 F.2d at 1258).
 

 In
 
 Travelers,
 
 the Ninth Circuit stated:
 

 This ease involves ordinary contract and tort issues and is thus unlike
 
 Colorado River
 
 where important real property rights were at stake and where there was a substantial danger of inconsistent judgments. Here there is no “vastly more comprehensive” state action that can adjudicate the rights of many parties or the disposition of much property____ Since at the time of the district court’s stay order the state court had madé no rulings whatsoever in regard to this dispute, there is no certainty that duplicative effort would result____ In addition, whichever court were to first reach a judgment on the merits, that judgment would most likely have conclusive effect on the other court.
 
 See Mobil Oil Corp. v. City of Long Beach,
 
 772 F.2d 534, 542 (9th Cir.1985).
 

 Travelers,
 
 914 F.2d at 1369.
 

 In the case at bar, an exceptional danger exists that piecemeal litigation might occur. First, under Hawaii law, res judicata does not apply until there is a final judgment on appeal.
 
 [3]
 
 This means that even if the state court decides this matter first, the federal court must continue to entertain it until a final judgment on appeal is reached. This significantly increases the amount of time in which the case may remain in federal court. The chance of duplicative litigation, not to mention inconsistent results, is thus quite high.
 

 
 *738
 
 Second, early rulings concerning the statute of limitations may also lead to inconsistent results. In this case, the parties dispute which statute of limitations applies to Counts II and III,
 
 [4]
 
 as well as whether those Counts are time-barred. The parties further contest the time at which the statute of limitations began to run for Count IV, which alleges misappropriation of trade secrets.
 

 The court in
 
 Darling’s v. Nissan Motor Corp.,
 
 863 F.Supp. 26, 31 (D.Me.1994), addressed this problem of early rulings:
 

 [T]he real danger in this case is the likelihood that some of the questions presented will be resolved by pretrial and prejudgment orders issued well before the judgment becomes final. These preliminary decisions would not be binding on subsequent determinations of the same issues in the other forum. Accordingly, there is a danger of inconsistent results____ Because the danger of contradictory and unfair results is a real possibility ..., the Court finds that the desire to avoid piecemeal litigation results from more than the inevitable duplication and inefficiency which routinely accompany parallel proceedings. This factor therefore strongly counsels in favor of dismissal or stay.
 

 Moreover, with the statute of limitations, contrary holdings may occur because 28 U.S.C. § 1367(d)
 
 [5]
 
 only tolls those actions that are later refiled in state court.
 
 See
 
 David D. Siegel, The 1990 Adoption of § 1367, Codifying “Supplemental” Jurisdiction, at 836 (practice commentary to 28 U.S.C. § 1367) (stating that § 1367(d) assures that a “claim shall have at least a 30-day period for the state action after it is dismissed by the federal court”). As a result, if the § 1367(d) tolling period becomes critical, the federal court may have to bar a claim while the state court allows it.
 

 Third, piecemeal litigation might also arise if Beidas does not file his counterclaim in the federal court action. Beidas might keep his action solely in state court, which means that the federal court will only rule on Morisada’s claims and that the state court will rule on both Morisada’s and Beidas’ claims. Accordingly, this factor weighs in favor of a stay.
 

 D. The Order In Which Jurisdiction Was Obtained
 

 Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in each action.
 
 See id.
 
 at 1370 (citing
 
 Cone,
 
 460 U.S. at 21,103 S.Ct. at 939-40). The mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden on the defendant which would justify abstention.
 
 See id.
 
 (citing
 
 Herrington v. County of Sonoma,
 
 706 F.2d 938, 940 (9th Cir.1983)). Additionally, circumvention of the federal removal statute, 28 U.S.C. § 1441(b), may be considered in connection with this factor.
 
 See Fumero-Vidal v. First Federal Savings Bank,
 
 788 F.Supp. 1275, 1283 (D.P.R.1992).
 

 In this ease, the state court action was filed nearly a year earlier. This difference in filing time is not significant. Aside from this Court making a substantive ruling dismissing the ERISA claims as pre-empted, the two forums are otherwise at the same relative stage. In terms of the progress made then, this factor carries little weight.
 

 However, in light of concern over circumvention of the federal removal statute, this factor merits a stay. To permit the suit to proceed in federal court on grounds of diversity would undermine the purpose of the federal removal statute. The removal stat
 
 *739
 
 ute specifically states that a suit is only removable to federal court on the basis of diversity if none of the parties in interest named as a defendant is a citizen of the state in which the action has been brought. It is undisputed in the case at bar that Morisada is a citizen of the State of Hawaii.
 
 [6]
 
 Allowing Morisada to move this state court action to federal court by refiling would circumvent the prohibition on removal by instate defendants.
 
 [7]
 

 Several
 
 Colorado River
 
 eases discuss the importance of upholding the removal statute.
 
 See American Int’l,
 
 843 F.2d at 1261 (stating that the district court was correct to dismiss plaintiff’s federal suit on the ground that dismissal was necessary to prevent plaintiff “from making an end-run around the prohibitions against removal by a plaintiff.”);
 
 Gonzalez v. Cruz,
 
 926 F.2d 1, 4 (1st Cir.1991) (following
 
 American Int’l); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,
 
 947 F.2d 529, 536 (1st Cir.1991) (discussing that “[t]o allow Villa Marina to proceed here is tantamount to removal because it would have the effect of allowing a plaintiff, who initiates an action in state court, to remove it to federal court when he feels that events have taken an unfavorable” turn, and holding that a plaintiff should not be allowed to circumvent the policy of the removal statute which reflects a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant);
 
 Hoodco, Inc. v. United Capitol Insurance Co.,
 
 875 F.Supp. 541, 544 (S.D.Ill.1994) (indicating that when a resident state court defendant files a complaint in federal court, thereby circumventing the removal statute, a stay under
 
 Colorado River
 
 is appropriate);
 
 Robinson v. Ruiz,
 
 772 F.Supp. 212, 216 (D.Del.1991) (stating that
 
 Colorado River
 
 dismissal is appropriate where party filed federal action after missing the time limit for removing the state court action, because to exercise jurisdiction would result in sanctioning circumvention of the federal removal statute);
 
 Fireman’s Fund Ins. Co., Inc. v. PaineWebber Real Estate Securities, Inc.,
 
 690 F.Supp. 879, 882 (N.D.Cal.1988) (finding that not to stay action would undermine policy of removal statute since instate insurer’s filing of action in federal court looked like an attempt to avoid the limits of the removal statute);
 
 Kent v. Cook,
 
 637 F.Supp. 1005, 1011 (N.D.Ind.1986) (providing that defendant in state case should not be allowed to circumvent removal statute by simply filing federal claim after failing to remove case to federal court in timely fashion);
 
 Fumero-Vidal v. First Federal Savings Bank,
 
 788 F.Supp. 1275, 1283 (D.P.R.1992) (holding that circumvention of the policy against plaintiff removal is a factor to consider).
 

 Additionally, to permit the federal action here would undermine this Court’s earlier orders. In both its Order Granting Plaintiffs’ Motion To Remand, filed September 30, 1994, when it remanded the original claim and dismissed the counterclaim, and its Order Denying Defendants’ Motion For Reconsideration, filed October 25, 1994, when it sustained its prior order, this Court expected Morisada to refile its counterclaim in state court.
 
 [8]
 
 In declining to exercise its power of
 
 *740
 
 supplemental jurisdiction, and hear the counterclaim though it remanded the underlying claim, this Court expressed its preference for the state court as the proper forum for all claims.
 
 [9]
 

 Furthermore, to permit the federal action here would undermine Beidas’ choice of forum. By maintaining an action in federal court, Morisada may make Beidas file a compulsory counterclaim to the federal claim, and entertain the entire action in federal court, even though the original suit brought by Beidas is now in state court. Beidas’ choice of forum should be given due weight.
 

 E. The Rule Of Decision
 

 Although the presence of federal law issues must always be a major consideration weighing against surrender, the presence of state law issues may weigh in favor of that surrender only in some rare circumstances.
 
 See Travelers,
 
 914 F.2d at 1370 (citing
 
 Cone,
 
 460 U.S. at 26, 103 S.Ct. at 942.);
 
 see also id.
 
 at 1369 (stating that misrepresentation, breach of fiduciary duty, and breach of contract are routine issues of state law that should not be stayed by a federal court);
 
 Intel Corp.,
 
 12 F.3d at 915 (finding that presence of state law issues — especially relating to breach of contract — is not generally a valid justification for granting a stay under
 
 Colorado River;
 
 existence of state law issues does not outweigh the court’s obligation to ensure the “complete and prompt” resolution of all the parties’ claims, state and federal).
 

 In the instant case, this factor weighs in favor of a stay. First, only state law questions remain in this action. This Court already ruled on the ERISA claims in a prior hearing, and at the hearing on February 27, 1995, Beidas stipulated that he will not challenge the ERISA claims in state court. Second, a question remains as to whether the alleged violation of the Hawaii Trade Secrets Act is a routine matter of state law. If it is not, the state court is the preferable forum to handle the claim. Third, even though the Ninth Circuit has held that garden variety state law issues should remain in federal court, the United States Supreme Court in
 
 United Mine Workers of America v. Gibbs,
 
 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), discussing the exercise of pendent jurisdiction, has held that state law claims should be decided in state court.
 
 [10]
 

 F. Inadequacy Of The State Court Proceeding To Protect The Federal Litigant’s Rights
 

 This factor involves the state court’s adequacy to protect federal rights, not the federal court’s adequacy to protect state rights.
 
 See Travelers,
 
 914 F.2d at 1369 (citing
 
 Cone,
 
 460 U.S. at 26, 103 S.Ct. at 942). The possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court’s deference to the state court action.
 
 See id.
 
 (citing
 
 Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,
 
 800 F.2d 325, 328 (2d Cir.1986)). In addition, it appears that the Ninth Circuit has not applied this
 
 *741
 
 factor against the exercise of federal jurisdiction, only in favor of it.
 
 See id.
 

 In the case at bar, the Plaintiffs state court counterclaim contains only state law issues. Since there is therefore no concern that Plaintiffs’ federal rights will be inadequately protected in state court, this factor carries no weight.
 

 G. Forum Shopping
 

 Forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules.
 
 See Travelers,
 
 914 F.2d at 1370. (citing
 
 Nakash v. Marciano,
 
 882 F.2d 1411, 1417 (avoidance of adverse rulings) and
 
 American Int’l,
 
 843 F.2d at 1259 (application of Federal Rules of Evidence));
 
 see also Cone,
 
 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20 (stating that it found “considerable merit” in the idea that “the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River”);
 
 Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,
 
 915 F.2d 7, 15 (1st Cir.1990) (stating that forum shopping occurs where a state court defendant rushes “over to the federal courthouse in the hope of obtaining a more favorable determination”).
 

 Beidas claims that Morisada is forum shopping. The Court agrees as Morisada’s counsel stated at the hearing that he filed this action in federal court because he had “more confidence” in the federal court than in the state court to resolve this matter properly. Since Morisada appears to be seeking favorable rulings, the flipside of wanting to avoid adverse rulings, this factor favors a stay. The “vexatious or reactive nature” of this federal suit (Plaintiffs filed their complaint nearly four years after Beidas left their corporation) only adds to the weight in support of that stay.
 

 H. The Balance
 

 The decision whether to stay a federal action does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.
 
 See Travelers,
 
 914 F.2d at 1368 (quoting
 
 Cone,
 
 460 U.S. at 16, 103 S.Ct. at 937). “Exceptional circumstances” and the “clearest of justifications” are required to grant a stay.
 
 See Cone,
 
 460 U.S. at 25-26, 103 S.Ct. at 941-42.
 

 Upon review, the Court finds that the “exceptional” circumstances required for
 
 Colorado River
 
 deference exist. Indeed, four of the seven factors significantly favor granting a stay. These factors include the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained (especially the concern over circumvention of the removal statute, respect for prior orders of this Court, and regard for Beidas’ choice of forum), the applicability of which rules of decision govern, and the prevention of forum shopping. Of the remaining three factors, none of them merit any weight in this determination. As a result, this Court stays its exercise of jurisdiction.
 

 CONCLUSION
 

 For the foregoing reasons, this Court STAYS this action pending resolution of it by the state court. However, pursuant to the policy of the Civil Justice Reform Act, 28 U.S.C. § 471 et seq., to ensure the just, speedy, and inexpensive resolution of civil disputes, this stay will be effective until October 1,1996. If the state court has not decided this case by that date, upon motion of either party, the Court will reconsider the stay.
 

 IT IS SO ORDERED.
 

 [1]
 

 . The Court is not persuaded by Defendants' argument that the complaint in this action should be barred because it is also a compulsory counterclaim in a state court action. Compulsory counterclaims concern the requirement that pleadings “shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing parly, if it arises out of the transaction or occurrence that is the subject matter of the opposing parly's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.” Fed.RXiv.P. 13(a). The Court finds that Rule 13(a) does not address the circumstances in which a federal court should stay or dismiss proceedings because of the pendency of a related state court proceeding. More appropriately, the
 
 Colorado River
 
 doctrine governs those situations.
 
 See generally Kirkbride v. Continental Cas. Co.,
 
 933 F.2d 729, 734 (9th Cir.1991).
 

 [2]
 

 .
 
 The standard of review in
 
 Colorado River
 
 stay cases is abuse of discretion.
 
 See Travelers,
 
 914 F.2d at 1367. The abuse of discretion standard in these cases, however, should not be confused with the broader abuse of discretion test used in other matters, such as rulings on certain evidentiaiy issues.
 
 See id.
 
 (quoting
 
 American Int'l Underwriters, Inc. v. Continental Ins. Co.,
 
 843 F.2d 1253, 1256 (9th Cir.1988)). A district court’s discretion here must be exercised within the “exceptional circumstances” limits of the
 
 Colorado River
 
 doctrine.
 

 [3]
 

 . Both claim preclusion and issue preclusion require that a final judgment on the merits was rendered.
 
 See Santos v. State of Hawaii,
 
 64 Haw. 648, 653, 646 P.2d 962 (1982). Under Hawaii law, a judgment is final for purposes of res judicata where the time to appeal has expired without an appeal being taken.
 
 See Glover v. Fong,
 
 42 Haw. 560 (1958). A Hawaii appellate court has noted "that where an appeal has been taken, a judgment of the trial court is not final, at least for purposes of res judicata.”
 
 See Littleton v. State of Hawaii,
 
 6 Haw.App. 70, 708 P.2d 829, 833 (1985). The Hawaii Supreme Court would apparently concur.
 
 See Kauhane v. Acutron Company,
 
 71 Haw. 458, 465, 795 P.2d 276 (1990) (stating that state circuit court’s judgment became final for res judicata purposes once plaintiff’s appeal withdrawn);
 
 Silver v. Queen’s Hosp.,
 
 63 Haw. 430, 440, 629 P.2d 1116 (1981) (finding that state district court's judgment was finalized by the state supreme court's denial of certiorari);
 
 City and County of Honolulu v. Kam,
 
 48 Haw. 349, 358 n. 17, 402 P.2d 683 (1965) (holding that issue of whether there was a garnishable debt became res judicata on affirmance of the judgment).
 

 [4]
 

 . Count II alleges tortious inducement of breach of contract, and Count III alleges tortious interference with Morisada and ABC’s business relationships. Defendants argue that the two year limitations period provided in Haw.Rev.Stat. § 657-7 governs. Plaintiffs contend that the six year limitations period provided in Haw.Rev. Stat. § 657-1(4) rules.
 

 [5]
 

 . Section 1367(d) provides, in relevant part, as follows:
 

 The period of limitations for any claim asserted under subsection (a),
 
 and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a),
 
 shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
 

 (emphasis added).
 

 [6]
 

 . As a result, Morisada cannot claim prejudice if it is forced to litigate its claims in state court. 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure
 
 § 3601 at 337-38 (the traditional, and most often cited, explanation of the purpose of diversity jurisdiction is the fear that state courts would be prejudiced against out-of-state litigants).
 

 [7]
 

 . At the hearing. Plaintiffs suggested that the facts here are similar to
 
 Cone.
 
 The Court disagrees. In
 
 Cone,
 
 the Respondent, an out-of-stater, filed a diversity action in federal court. This filing was within the province of the removal statute, and thus proper. Here, however, the Plaintiffs are instaters, and thus are barred by the removal statute from filing a diversity action in federal court.
 

 [8]
 

 . In the first order, the Court stated: "The Court also dismisses [Morisada’s] counterclaim without prejudice.
 
 Defendants [Morisada et at] may refile their counterclaim with the Circuit Court of the First Circuit, State of Hawaii."
 
 Order Granting Motion To Remand at 10 (filed September 30, 1994) (emphasis added).
 

 In the second order, the Court stated that it "dismissed [Morisada’s] counterclaim. The Court did not (and, indeed, could not) remand [Morisada’s] counterclaim to the Hawaii state court system since [Morisada's] counterclaim was originally filed in federal court.” Order Denying Defendants’ Motion For Reconsidera
 
 *740
 
 tion at 3 (filed October 25, 1994) "Furthermore, the dismissal without prejudice of [Morisada’s] counterclaim does not appear to create any statute of limitation problem. 28 XJ.S.C. § 1367 tolls the statute of limitation for 30 days, within which
 
 [Morisada et at] may refile their counterclaim in the Hawaii state court system." Id.
 
 at 4 (emphasis added).
 

 [9]
 

 . The Court explained:
 

 The Court declined jurisdiction, because it found that the judicial interests of federalism, comity and economy would be best served by resolving the remaining state law issues in state court. Order "Granting Plaintiff's Motion To Remand” at 8, 10 (citing
 
 United Mine Workers of America v. Gibbs,
 
 [383 U.S. 715, 726] 86 S.Ct. 1130, 1139 [16 L.Ed.2d 218] (1966)) (needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties; if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well).
 

 Order Denying Defendants’ Motion For Reconsideration at 3 n. 1 (filed October 25, 1994).
 

 [10]
 

 . The
 
 Gibbs
 
 Court stated:
 

 Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.
 

 Id.
 
 at 726, 86 S.Ct. at 1139 (footnotes omitted).